UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JEREMY A. MOORE, | CASE NO. CV 10-07694 ODW (SSx) |
| Plaintiff, | ORDER **DENYING** Defendant's Motion to Dismiss [33] (Filed 05/05/11) |
| v. | |
| COUNTY OF LOS ANGELES; et al. | |
| Defendants. | |

## I. INTRODUCTION

Currently before the Court is Defendant County of Los Angeles's (the "County") Motion to Dismiss Plaintiff Jeremy A. Moore's ("Plaintiff") First Amended Complaint ("FAC"). (Dkt. No. 33.) Plaintiff filed an Opposition on May 19, 2011, to which Defendant filed a Reply on May 27, 2011. (Dkt. Nos. 36, 37.) Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. *See* FED. R. CIV. P. 78; L.R. 7-15. For the following reasons, the County's Motion to Dismiss is **DENIED.**

## II. FACTUAL BACKGROUND

Plaintiff was employed by the County in the District Attorney's Office ("DAO") from approximately March 9, 2008 through March 9, 2009. (FAC ¶ 7.) On or about March 24, 2008, the Association of Deputy District Attorneys ("ADDA") was certified

as a "full-fledged public employees union" representing the prosecutors of Los Angeles County Bargaining Unit 801. (FAC ¶¶ 2, 13.) Plaintiff alleges that the County *vis-a-vie* District Attorney Steven Cooley ("Cooley"), and several other "top ranking officials," including Peter Bliss, Pam Booth, Jacquelyn Lacey, John Spillane, and Julie Dixon Silva (collectively, the "Supervisory Defendants"), subsequently instituted an office-wide anti-union discrimination policy against Deputy District Attorneys ("DDAs") who supported and/or were members of the ADDA. (FAC ¶¶ 2, 10, 15, 17.) Plaintiff claims that the Supervisory Defendants had authority over promotions, demotions, transfers, discipline, and termination within the DAO, and thus they were able to discriminate against employees that supported and/or joined the ADDA. (FAC ¶ 10.) Plaintiff further alleges that, prior to his employment with the DAO, several DDAs – including Steven Ipsen, Marc Debbaudt, Hyatt Seligman, Robert Dver, and John Harold – had already been retaliated against for their involvement and/or support of the ADDA. (FAC ¶¶ 15-19, 26.)

As to Plaintiff's own claim of retaliation, Plaintiff alleges that sometime around the first month of his employment, he spoke to Cooley about the formation of a union, and that Cooley responded with a "dirty look." (FAC ¶ 24.) Additionally, Plaintiff avers that he was told by the DDAs in charge of training that association with ADDA members was "not a good idea." (FAC ¶ 25.) Finally, Plaintiff states that on or about October 16, 2008, Cooley's agents unlawfully obtained signature cards and/or documents containing the names of DDAs who signed cards indicating their support of the ADDA. (FAC ¶ 27.) Plaintiff maintains that his name appears on one of these signature cards and/or in these documents. (FAC ¶ 27.) Consequently, Plaintiff argues that because he supported the ADDA, Defendants discriminated against him and refused to retain him at the end of his one-year probationary period despite his "competent" work performance. (FAC ¶ 30.)

On March 3, 2011, the Court granted both the County and Cooley's separate Motions to Dismiss Plaintiff's Complaint. (Dkt. No. 24.) Subsequently, on March 24, 2011, Plaintiff filed a First Amended Complaint alleging two causes of action under 42 U.S.C. § 1983 for violation of his constitutional rights of: (1) freedom of association, and

(2) freedom of speech. (Dkt. No. 27.) On May 5, 2011, the County brought the instant Motion to Dismiss the FAC.[1] (Dkt. No. 33.)

### III. LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, to overcome a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (internal citation and quotation marks omitted).

When considering a 12(b)(6) motion, a court is generally limited to considering material within the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

---

[1] On May 11, 2011, former Defendant Steve Cooley was dismissed from this case pursuant to the parties' stipulation. (Dkt. No. 34.) In addition to the County, five additional Defendants were named in the FAC. Because these five Defendants have not joined in the instant Motion, any claims against them necessarily survive the County's Motion to Dismiss.

3

## IV. DISCUSSION

The County moves to dismiss Plaintiff's FAC, asserting that the "FAC – like [the] original Complaint [] – fails to plead sufficient factual matter to state a § 1983 claim against the County under *Monell v. New York City [Department] of Social [Services]*, 436 U.S. 658 [] (1978)."[2] (Mot. at 1.) Under § 1983, "[e]very person who, under color of any statute . . . custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Although municipalities are not liable for the actions of their employees under a *respondeat superior* theory, they can be sued under § 1983 where it is shown that "the action [] alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690. Indeed, "liability may attach to a municipality only where [the] [municipality] itself *causes* the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (emphasis added). A plaintiff may establish the existence of such a policy under *Monell* in one of three ways: "(1) that a [municipal] employee was acting pursuant to an expressly adopted official policy; (2) that a [municipal] employee was acting pursuant to a longstanding practice or custom; or (3) that a [municipal] employee was acting as a 'final policymaker.'" *Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir. 2004).

Plaintiff in this case does not argue that Cooley or the Supervisory Defendants were acting pursuant to an expressly adopted official policy from either the DAO or from the County. Rather, Plaintiff only frames the alleged discriminatory policy as a longstanding

---

[2] In conjunction with its Motion to Dismiss, the County asks the Court to take judicial notice of the fact that the County has thirty-seven departments, one of which is the DAO. (Def.'s RJN at 1-2.) Additionally, the County requests that the Court take judicial notice of the "Civil Service Rules for the County of Los Angeles." (Def.'s RJN at 2; Exh. A.) For purposes of the instant Motion, the Court finds it unnecessary to take judicial notice of either. Consequently, the County's request is **DENIED**.

4

practice or custom, or as a policy created by a final policymaker. The Court will address each of these concepts in turn.

### A. LONGSTANDING PRACTICE OR CUSTOM

A longstanding practice or custom is an act or a series of acts that has not been formally approved by an appropriate decision maker, but is so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell*, 436 U.S. at 691. Such a longstanding practice or custom "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Thus, where there is a longstanding practice or custom "which constitutes the 'standard operating procedure' of the local government entity," the municipality will be liable under § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Additionally, "[t]he plaintiff[] need not specifically allege a custom or policy; it is enough if the custom or policy can be inferred from the allegations of the complaint." *Shaw v. Cal. Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986).

Here, the County argues that Plaintiff's FAC "still alleges no facts to support his bare conclusion that the County had . . . a longstanding practice or custom that constitutes the County's standard operating procedure." (Mot. at 1.) Specifically, the County contends that Plaintiff fails to allege that Cooley and the Supervisory Defendants were acting pursuant to a longstanding practice or custom to discriminate against DDAs who supported the ADDA. (Mot at 8.) Plaintiff, however, avers that on or about December 28, 2007, Cooley engaged in a campaign of retaliation against DDAs who supported or participated in union activities, and continued to do so until at least March 9, 2009, when Plaintiff's employment was allegedly terminated for his association with the ADDA. (FAC ¶¶ 14-15, 30.) In this respect, Plaintiff points to the facts that (1) Cooley told his agents to seize union related documents, (2) Cooley's agents refused to distribute a memorandum to all DAO prosecutors indicating that the DAO would not retaliate against ADDA members, (3) Cooley did not lower ADDA member's health insurance monthly

fees when all other County employees health care costs were lowered, and (4) that Cooley otherwise tried to discourage or undermine union support. (FAC ¶¶ 14, 15, 20, 24-27.) Plaintiff further alleges that several other DDAs were retaliated against by or through Cooley for their association with the ADDA. (FAC ¶¶ 15, 17-19, 26). Specifically, Plaintiff claims that the president of the ADDA, Steven Ipsen, was given unwarranted ratings on his performance evaluation on July 14, 2009; and that the vice president of the ADDA, Marc Debbaudt, who had been a prosecutor in the DAO for over twenty years, was transferred to an entry-level assignment at Pomona Juvenile Court. (FAC ¶¶ 17, 18.) Additionally, Plaintiff alleges that Robert Dver was transferred and stripped of his supervisory tasks after he refused to follow Cooley's instructions to undermine the ADDA; and that Hyatt Seligman, an ADDA board member with over thirty years of experience in the DAO, was punitively transferred, stripped of all training obligations for new DDA's, not given any cases relating to his area of expertise, and given poor performance reviews. (FAC ¶¶ 15, 19.)

Accepting these allegations as true, which the Court must do when deciding a motion to dismiss, the abovementioned facts regarding Cooley and the Supervisory Defendants' actions towards ADDA members, including Plaintiff, are sufficient at this stage of the litigation. (FAC ¶¶ 33, 39.) Furthermore, to the extent the County argues that any instances of anti-union behavior were sporadic and isolated and thus insufficient to establish a claim under § 1983, the Court finds that the abovementioned allegations regarding retaliation against other DDAs specifically controvert any assertion that any retaliation against Plaintiff was an isolated incident. Consequently, the Court finds Plaintiff's allegations sufficient to state a claim for *Monell* liability under a longstanding practice or custom theory.

### B. FINAL POLICYMAKER

A final policymaker is an official that "speak[s] with final policymaking authority" for a municipality concerning the allegedly unconstitutional action at issue. *Jett,* 491 U.S. at 737. An official may have also been delegated final policymaking authority by a municipality in instances where "the official's discretionary decision is [not] 'constrained

by policies not of that official's making' and . . . [not] 'subject to review by the municipality's authorized policymakers.'" *Ulrich,* 308 F.3d at 986 (quoting *Christie v. Iopa,* 176 F.3d 1231, 1236-37 (9th Cir. 1999)). To be a final policymaker, the official must be in a position of authority such that "a final decision by that person may appropriately be attributed to the [defendant public body]." *Lytle,* 382 F.3d at 983. Ultimately, "[w]hether a particular official has 'final policymaking authority' is a question of state law." *Id.* at 982.

While the County asserts that the "FAC does not purport to allege that Cooley or any of these 'senior officials' were final policymaker[s] for the County," (Mot. at 8), Plaintiff specifically alleges that Supervisory Defendants Peter Bliss, Pam Booth, Jacquelyn Lacey, John Spillane, and Julie Dixon Silva had authority over "promotions, demotions, transfers, discipline, and termination within the [DAO] . . . ," and that they engaged in a "policy of discrimination" in connection with Cooley's "campaign of retaliation against those DDAs who supported or participated in union activities." (FAC ¶¶ 10, 15.) Additionally, Plaintiff claims that Cooley had the ability to keep ADDA employees' health insurance monthly fees fixed when all other County employees fees were reduced. (FAC ¶ 20.) Assuming Plaintiff's allegations in this respect are true, which the Court must do, Plaintiff successfully alleges that Cooley and the Supervisory Defendants either had final policymaking authority or had been delegated such authority by the County.

Furthermore, to the extent that the County argues that the District Attorney ("DA") is not a final policymaker for the County as a matter of law (Mot. at 8-9), California statutory provisions indicate that: (1) DAs are listed as county officers; (2) counties set DAs' salaries; (3) DAs must be registered to vote in their respective counties; (4) counties supervise DAs' conduct and use of public funds; and (5) DAs can be removed from office following the same procedures applied to other district, county, and city officers, *i.e.*, a grand jury submitting a written accusation to a state court. *See* CAL. GOV'T CODE §§ 24000(a), 24001, 25300, 25303, 3060, 3073; *see also Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1029-31 (9th Cir. 2000) (holding that California law suggests that a district

attorney is an officer of the county in some instances). A review of these statutes suggests that the DA may be a final policymaker for the County. Accordingly, the Court is unable to conclude at this stage of the litigation that Cooley was not a final policymaker. *See Ulrich*, 308 F.3d at 985. Indeed, "these inquires may turn on questions of fact." *Id.*

## V. CONCLUSION

At this stage of the litigation, the Court finds that Plaintiff has sufficiently alleged that Cooley and the Supervisory Defendants were acting pursuant to a longstanding practice or custom, and/or that Cooley and the Supervisory Defendants are final policymakers. Consequently, the Court finds Plaintiff's allegations sufficient to state a claim for relief under *Monell*. The County's Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

June 21, 2011

_____
HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE