O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY A. MOORE,<br><br>    Plaintiff,<br>    v.<br><br>COUNTY OF LOS ANGELES, PETER BLISS, PAM BOOTH, JACQUELYN LACEY, JOHN SPILLANE, and JULIE DIXON SILVA,<br><br>    Defendants. | Case No. 2:10-cv-07694-ODW(SS)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [50]** |

## I.  INTRODUCTION

This Motion for Summary Judgment concerns whether Defendant County of Los Angeles can be held liable under 42 U.S.C. § 1983 for violating Plaintiff Jeremy Moore's First Amendment rights by allegedly terminating his employment for union involvement.[1]  The Court holds that Plaintiff has failed to introduce sufficient evidence to create a triable issue of material fact on his claims and therefore **GRANTS** the County's Motion.

---

[1] The Court notes that although Plaintiff sues several "top ranking officials" of the County, including Peter Bliss, Pam Booth, Jacquelyn Lacey, John Spillane, and Julie Dixon Silva (collectively, the "Supervisory Defendants"), only the County moves for summary judgment.  Accordingly, the Court does not address the sufficiency of the evidence concerning the Supervisory Defendants.

## II. FACTUAL BACKGROUND

Plaintiff worked for the County in the District Attorney's Office from approximately March 9, 2008, through March 9, 2009. (Plaintiff's Statement of Uncontroverted Facts ("SUF") 1.) Plaintiff avers the County constructively terminated him because of his involvement in the Association of Deputy District Attorneys ("the Union"). (Opp'n 1.) On or about March 24, 2008, the Union was certified as a "full-fledged public employees union" representing the prosecutors of Los Angeles County Bargaining Unit 801. (SUF 49.)

Plaintiff seeks to offer evidence that the County—through District Attorney Steve Cooley and several other "top ranking officials"—instituted an office-wide anti-union discrimination policy against Deputy District Attorneys who supported or were members of the Union. *Id.* Plaintiff relies heavily on a similar lawsuit before this Court where the Court granted a preliminary injunction against the County on March 10, 2010. *Unnamed Deputy Dist. Attorney v. Cnty. of L.A.* ("*Unnamed DDA*"), No. CV 09-7931-ODW (C.D. Cal.). There, some senior DDAs were transferred to other departments or demoted allegedly based on their Union involvement. *Id.* In addition, a hearing officer of an administrative arm of the County of Los Angeles—the Employee Relations Commission ("ERCOM")—found that the DA's Office engaged in a "deliberate and thinly disguised campaign . . . to destroy the [Union] and, if necessary, its officers and members," and showed "a pattern of anti-union conduct." (Pl.'s Request for Judicial Notice ("RJN"), Ex. 1, at 53, ¶ 4).

Plaintiff repeatedly cites *Unnamed DDA* as "the backdrop" establishing the environment at the DA's Office during his employment. (Opp'n 2.) The County responds that *Unnamed DDA* is a distinct and ongoing case to which Plaintiff is not a party but nonetheless blatantly and improperly bootstraps to form the basis of his own action. (Mot 1.) Further, the County objects to the admissibility of the ERCOM hearing officer's findings as hearsay and improper opinion under Federal Rules of Evidence 602, 701 and 802. (Reply 11.)

The County produces evidence that *Plaintiff's* discharge was for good cause based on his well-documented poor performance during his one-year probationary period. (SUF 46.) Plaintiff lacks evidence, the County argues, that either Cooley or any of the "top ranking officials" who were involved in his performance evaluations or the decision to discharge him even knew of his Union activities and thus could not discriminate against him on that basis. (Mot. 11.)

Plaintiff, however, seeks to offer evidence that both Cooley and John Zajec—the Branch and Area Region 1 District Attorney's Office's Bureau Director—were aware of Plaintiff's support for the Union. (Opp'n 5.) Regarding Cooley, Plaintiff offers evidence that when asking Cooley a question about the Union during a question and answer session for newly hired DDAs, in March of 2008, Cooley did not respond but gave Plaintiff a "dirty look." *Id.* Regarding Zajec, on May 5, 2008, Plaintiff told him in passing that he was going to a Union meeting. (Jeremy Moore Decl. 5.)

Plaintiff also notes that at some point during his employment he "signed a document to show support" for the Union. (SUF 51.) The Union filed authorization cards and a written summary list of the contents of those cards with ERCOM, which ERCOM was supposed to maintain as confidential. (SUF 52.) However, on or about October 16, 2008, a member of the County's management team and the Union, Peter Burke, gained access to the contents of the Union authorization cards, which presumably included evidence of Plaintiff's support for the Union. (SUF 53.)

Notwithstanding Plaintiff's circumstantial evidence, the County points out that Plaintiff offers no evidence that Cooley, Zajec or any of the Supervisory Defendants were *actually* aware of the contents of ERCOM's inadvertent disclosure to Burke. (Mot. 11; SUF 53–54.) Moreover, it is undisputed that the County had an explicit anti-discrimination policy. (SUF 6.) For instance, the County's Board of Supervisors prescribed and adopted the Civil Service Rules, which governed Plaintiff's employment. *Id.* Those rules explicitly prohibit any type of employment

discrimination because of "political opinions" or affiliations or other non-merit factors "not substantially related to successful performance a position's duties." (SUF 6.)

The Court now assesses the merits of the Motion for Summary Judgment.

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV. DISCUSSION

The County moves for summary judgment on Plaintiff's entire First Amended Complaint ("FAC"). Before the Court can assess whether a genuine issue exists concerning Plaintiff's discrimination claim, the Court must examine whether the County can be held vicariously liable for the alleged tortious conduct of its employees.

*Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 658 (1978). If the answer is no, then the analysis stops here and no municipal liability can attach. *Id*. Because the Court finds that no triable issue of material fact exists as to *Monell* liability, the Court **GRANTS** the County's Motion in its entirety.

The Civil Rights Act holds liable any person who deprives U.S. citizens, or other persons within federal jurisdiction, of their constitutional rights under color of law. 42 U.S.C. § 1983. The U.S. Supreme Court has held that "Congress intended the term 'person' to include municipalities" such as counties. *Christie v. Iopa*, 176 F.3d 1231, 1234–35 (9th Cir. 1999). Congress did not intend, however, to create respondeat superior liability. *Monell*, 436 U.S. at 691. Instead, municipalities can only be held liable when official municipal policy "caused a constitutional tort." *Id*. The "official policy" requirement distinguishes "acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80 (1986) (internal quotation marks omitted).

Against this backdrop, the Ninth Circuit has held that a plaintiff seeking to hold a municipality liable under § 1983 must proceed on one of three distinct theories: that a municipal employee was acting (1) "pursuant to an expressly adopted official policy"; (2) "pursuant to a longstanding practice or custom;" or (3) "as a final policymaker." *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Plaintiff seeks to establish *Monell* liability only on longstanding practice or custom and final policymaker theories. The Court considers Plaintiff's evidence for each theory.

**A.     Cooley and other DA's Office officials were not final policymakers**

Plaintiff contends Cooley and other officials in the DA's Office were either final policymakers on employment decisions for *Monell* purposes or were delegated final policymaking authority by the Board of Supervisors. (Opp'n 2.) The County responds that officials in the DA's Office are not final policymakers because their employment decisions are "constrained by policies not of [their] making." (Reply 11.)

The Court agrees, and thus finds no triable issue on whether Cooley or other DA's Office officials were final policymakers for purposes of *Monell* liability.

Whether an official has final policymaking authority is a question for the court to decide based on state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (holding that district courts must identify official policymakers based on "state and local positive law" and resolve this issue "*before* the case is submitted to the jury"). However, official policymakers may delegate final policymaking authority to other officials, which could subject the municipality to *Monell* liability. *Christie*, 176 F.3d at 1236–37.

Here, state and local law names the Board as the final policymaker for the County. L.A. Cnty. Code §§ 5.04.020, 5.04.070, 5.04.240(A), (D); *Burke v. Ipsen*, 189 Cal. App. 4th 801, 808, (2010). The question therefore becomes whether the policymaker merely has delegated discretion to act, or final policymaking authority. *Christie*, 176 F.3d 1236–37. For instance:

> [I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for liability. This would be true even if the Board left [a] Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent county policy and could rise to municipal liability. *Id.* (citing *Pembaur*, 475 U.S. at 480–81).

The analysis turns on whether the official's discretionary decisions are "constrained by policies not of that official's making," and whether those decisions are "subject to review by the municipality's authorized policymakers." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see Gillette v. Delmore*, 979 F.2d 1342, 1350 (9th Cir. 1992) (noting Fire Chief not a final policymaker, rather only City Manager

and City Council were authorized to make employment policy).

Here, Plaintiff has not offered evidence that the Board delegated final policymaking authority to Cooley or any other officials in the DA's Office. Instead, it is undisputed that the Board is the final policymaker on employment matters, including termination. (SUF 2.) Further, the Board exercises oversight over employment decisions made in the DA's Office. (SUF 7.) Plainly, whatever discretion Cooley and other DA's Office officials wield is constrained by policies not of their making, and is subject to review by the Board. *Praprotnik*, 485 U.S. at 127. Thus, Cooley and other officials at the DA's Office are not final policymakers for the County under *Monell* as a matter of law.

**B. Plaintiff has not shown longstanding discriminatory practices by the County**

Plaintiff seeks to present evidence that the County had longstanding discriminatory practices because "top ranking officials" in the DA's Office harbored animus toward the Union and terminated him because of his Union involvement. (Opp'n 1.) The County responds that even when viewed in the light most favorable to Plaintiff, the evidence reveals no specific "practices of sufficient duration, frequency, and consistency" to establish the standard operating procedure of the *County*, but merely "isolated or sporadic incidents" for which the County cannot be liable under *Monell*. (Mot 18.) Further, the County avers Plaintiff cannot prove causation. (Mot. 17). The Court agrees. Accordingly, the Court finds no reasonable jury could find in favor of Plaintiff on either longstanding practice of anti-union animus or the causal nexus Plaintiff must establish under this prong for *Monell* liability to attach.

By *Monell* and its progeny, the Supreme Court requires plaintiffs seeking to impose liability on a municipality under § 1983 (1) to identify a municipal "policy" or "custom" that (2) caused a plaintiff's injury. *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403–04 (1997). Ascertaining such a policy ensures that a municipality is held liable *only* "for those deprivations resulting from the decisions

of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality." *Id.* Similarly, an act performed under a custom that an appropriate decision maker has not formally approved may nonetheless subject a municipality to liability on the theory that the relevant practice is "so widespread as to have the force of law." *Id.* Likewise, a municipality's "acquiescence in a longstanding practice or custom" suffices to show the "standard operating procedure" of the local governmental entity, which would favor a finding of *Monell* liability. *Jett*, 491 U.S. at 737.

It is undisputed here that the County had an explicit anti-discrimination policy. (SUF 6.) The Board prescribed and adopted the Civil Service Rules, which governed Plaintiff's employment. *Id.* Those rules explicitly prohibit any type of employment discrimination because of "political opinions" or affiliations or other non-merit factors "not substantially related to successful performance a position's duties." (SUF 6.) The question thus becomes whether the County ratified or acquiesced to a longstanding practice of discrimination at the DA's Office or was deliberately indifferent to it. *Christie*, 176 F.3d at 1243.

The undisputed evidence supports a finding that the County does not endorse anti-union conduct—and in fact that the opposite is true. For example, the ERCOM hearing officer's findings,[2] and excerpts of allegations from *Unnamed DDA*,[3] are essentially all Plaintiff produces to show a discriminatory custom. The ERCOM hearing officer did find the DA's Office engaged in "a pattern of anti-union conduct." (Pl.'s RJN, Ex. 1, at 53, ¶ 4.) But the ERCOM hearing officer also sharply rebuked

---

[2] The Court takes judicial notice of the ERCOM proceedings under Federal Rule of Evidence 201(b): "A trial court may presume that public records are authentic and trustworthy," *Gilbrook v. City of Westminster*, 177 F. 3d 839, 858 (9th Cir. 1999), and, thus, fall within the purview of Federal Rule of Evidence 201.
    The County argues vociferously that the ERCOM findings are inadmissible hearsay and opinion. The Court overrules the County's objections and admits these findings under the public records exception to the hearsay rule, Fed. R. Evid. 803(8).

[3] The Court takes judicial notice of *Unnamed DDA* but only for purposes of examining *Monell* liability. The facts of *Unnamed DDA* are otherwise unduly prejudicial under Federal Rule of Evidence 403 to be probative on the merits of the Plaintiff's case.

Cooley for his anti-union conduct and recommended to ERCOM that Cooley's transferring of some Union members be rescinded, evidencing ERCOM's (and by extension, the County's) *rejection* of any anti-union sentiment. (Pl.'s RJN, Ex. 1, at 52, ¶ 2; 54, ¶ 1–2.) After all, it is undisputed that the *County* established ERCOM "to ensure that all county employees and their representatives are fairly treated, that their rights are maintained, and that their requests are fairly heard, considered and resolved." (SUF 7.) Likewise, the *County* promulgates and enforces the CSRs, which ERCOM adjudicates. (SUF 2, 7.) Thus, Plaintiff has not shown by a preponderance of the evidence that the County "ratified" the alleged misconduct in the DA's Office or was deliberately indifferent to it.

A discriminatory policy or custom must also be longstanding. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Case law does not precisely define "longstanding," but the alleged practices must be of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* Accordingly, liability for improper custom "may not be predicated on isolated or sporadic incidents." *Id.*

The longstanding nature of the alleged discrimination in this case is unclear. Plaintiff seeks to offer evidence that management at the DA's Office harbored anti-union animus since the inception of the Union and for approximately two years. (Opp'n 2–5.) The Court has doubts whether this is sufficient to establish a longstanding policy or custom. The Court needs not resolve this ambiguity, however, because Plaintiff has failed to establish causation.

While it is unclear how short a period may be considered "longstanding," the law *is* clear that the longstanding nature of a discriminatory policy inextricably involves nexus considerations. *Monell*, 436 U.S. at 694. Thus, the relationship between the animus and adverse action is what is truly dispositive, regardless whether the alleged discrimination was actually longstanding. *See Brown*, 520 U.S. at 403. Plaintiff must therefore show causation for *Monell* liability to attach, even if the policy

is deemed to be longstanding. *Brown*, 520 U.S. at 404.

As the Supreme Court found in *Brown*, it is not enough that a § 1983 plaintiff merely identifies "conduct properly attributable to the municipality." *Id.* The plaintiff must also show the municipality's "*deliberate* conduct" was the "moving force" behind the alleged injury—showing "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (emphasis in original). Further, for intentional retaliation to have been a substantial or motivating factor for an adverse employment action, the defendant must have known about the association *before* taking the action. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Here, Plaintiff contends that his Union involvement caused his termination. (Opp'n 8.) Plaintiff's reasoning is as follows: if Cooley would take adverse action against senior Union members, as the ERCOM hearing officer found, then of course he would take such action against Plaintiff—a probationary employee. *Id.* However, Plaintiff has not offered evidence, nor substantively disputed the County's evidence, that Cooley or those involved in the decision to terminate Plaintiff were even aware of his Union involvement—let alone that they discharged him because of it. In an effort to show they knew of his support for the Union, Plaintiff offers three incidents: (1) Plaintiff's asking Cooley a question about joining the Union during a question-and-answer session and receiving a "dirty look" in response (Opp'n 5); (2) the disclosure to Peter Burke of Union authorization cards (SUF 53); and (3) Plaintiff's telling Zajec in passing one day that Plaintiff was headed to a Union meeting (Moore Decl. 5). The Court discusses each incident in turn.

*1. Plaintiff's asking Cooley a question about joining the Union*

Plaintiff contends that his brief interaction with Cooley near the beginning of Plaintiff's training alerted Cooley to Plaintiff's association with the Union. (Opp'n 16.) Absent from the record, however, is even a scintilla of evidence showing Cooley even knew who Plaintiff was, let alone that Plaintiff had joined the Union. Further, Plaintiff does not contend that he expressly or impliedly made his support for the

Union known at the meeting. He just asked a general question for which he received a nonverbal response from the DA—a cold stare. Even viewing the evidence in the light most favorable to Plaintiff, a reasonable fact-finder could not find that this interaction with Cooley proves Cooley knew of Plaintiff's support for or membership in the Union.

   *2. Disclosure of Union authorization cards to Peter Burke*

Plaintiff argues ERCOM's disclosure of the Union authorization cards to Burke shows that *Cooley* was aware of Plaintiff's membership in the Union. (Opp'n 3.) At some point, Plaintiff signed a document to show support for the Union. (SUF 51.) The record is silent though as to exactly when Plaintiff signed this document. On or about October 16, 2008, Burke inspected and copied documents in ERCOM's files pertaining to the Union's certification. (SUF 53.) These documents included a membership list that the Union provided to ERCOM. (SUF 53.) Apparently, ERCOM staff mistakenly placed these documents in the "public official file" turned over to Burke. (SUF 53.) Plaintiff does not argue there was bad faith either on ERCOM's part or in how Burke obtained these documents. *Id.* Further, it is undisputed that Burke was a Union member himself.

When the mistake was discovered, Burke returned to ERCOM all of the inadvertently-disclosed documents, and ERCOM obtained a court order sealing the disclosure's contents. (SUF 54.) Plaintiff presents no evidence that Cooley or Plaintiff's supervisors saw the Union authorization cards or the contents of any of the documents Burke obtained. On these facts, no reasonable fact-finder could find that the Union authorization cards' inadvertent disclosure proves *Cooley* knew Plaintiff was a Union member or supporter.

   *3. Plaintiff's informing Zajec once that he was attending a Union meeting*

Finally, Plaintiff maintains Zajec's knowledge that Plaintiff once attended a Union meeting is dispositive. (Opp'n 17.) On May 5, 2008, Plaintiff saw Zajec and stated he was going to a Union meeting, but does not recall any response from Zajec.

(SUF 50.) It is undisputed that Zajec did not know of Plaintiff's Union association or speech aside from this one brief interaction. *Id.*

Although Plaintiff's telling Zajec he was going to a Union meeting could indicate Zajec actually knew of Plaintiff's Union involvement, Plaintiff offers no evidence, nor substantively disputes the County's evidence, that Zajec was involved in the decision to terminate Plaintiff's employment. Nor does Plaintiff offer evidence that Zajec shared this information with Cooley or Plaintiff's supervisors. Thus, no reasonable fact-finder could find that this brief interaction with Zajec supports a favorable finding for Plaintiff on the causation issue.

In sum, these three events do not show that the County was the "moving force" behind Plaintiff's alleged injury, and thus do not nudge Plaintiff any closer to satisfying his burden on summary judgment. *Brown*, 520 U.S. at 404. Plaintiff's blatant attempt to piggyback onto pending litigation not directly involving him is not lost upon this Court. Despite Plaintiff's creativity in fashioning a claim based on a shroud of conspiracy, his case is built upon sheer speculation and rampant innuendo. Plainly, the district court is not an institution of innuendo, nor a forum for forecasting. This case should be about whether *Plaintiff* was discriminated against based on his Union involvement—not whether others were purportedly retaliated against for Union activities.

Because no genuine dispute exists as to material facts such that a reasonable fact-finder could find in Plaintiff's favor on the causation issue, the Court finds Plaintiff lacks sufficient evidence to establish a longstanding practice or custom sufficient for *Monell* liability to attach to the County.

/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

For the above reasons, the Court finds that Plaintiff has failed to meet his burden to go beyond the pleadings and identify specific facts through admissible evidence establishing a genuine issue for trial. The County's Motion for Summary Judgment is therefore **GRANTED** in its entirety.

**IT IS SO ORDERED.**

August 15, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**